**CASE NO.: 23-10425DD**

---

**IN THE UNITED STATES  COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

SYLVAN PLOWRIGHT,

*Plaintiff-Appellant*,

v.

MIAMI-DADE COUNTY,
A Political subdivision of the State of Florida and
ALFREDO RAMIREZ III, CHIEF MDPD, officers
L. RONDON and A. CORDOVA

*Defendant-Appellees*

Appeal from the United States District Court
for the Southern District of Florida

No. 1: 22-cv-20203 MOORE/LEWIS

---

**APPELLANTS'OPENING BRIEF**

---

WILLIAM C. ROBINSON, ESQ
Florida Bar No: 386847
Attorney for Appellant
P. O. Box 61075
North Miami, FL 33261
Tel:  305-454-9632
Fax: 754-764-2266
Email: robinsonwilliam8@gmail.com

*Attorney for Appellant*
Sylvan Plowright

**Case Number: 23-10425-DD**

**Sylvan Plowright v. Miami-Dade County**

**Certificate of interested Persons and
Corporate Disclosure Statement**

Pursuant to the Federal Rules of Appellate Procedure 26.1 and the Eleventh Circuit Rules 26.1 the undersigned counsel for the appellants certify that the following persons may have an interest in the outcome of the case:

Cordova, A

Moore, K Michael, Senior District Judge

Plowright, Sylvan

Ramirez, Alfredo

Robinson, William C, Counsel for Appellant

Rondon, L

Zaron, Erica  S, Counsel for Appellees

**Statement Regarding Oral Argument**

Pursuant to Eleventh Circuit rule 28.1 appellant requests oral argument based upon qualified immunity and statutory immunity pursuant to Florida Statute 768.28(9)a. An oral argument will assist the court in its analysis due to the significance of the issue of excessive force violative of the Fourth Amendment. The appeal raises the question of whether using a Taser on a dog, and then shooting the pet dog was justified use of deadly force requiring qualified immunity, and whether sovereign immunity was properly applied by the District Court.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosures …………………C-1

Statement Regarding Oral Argument………………………………………………..i

Table of contents……………………………………………………………………….ii

Table of Citations ……………………………………….…………………………iii

Jurisdictional Statement……………………………………………………………..vi

Statement of  the Issues………………………………………………………………1

Statement of the Case…………………………………………………………………2

Summary of the argument…………………………………………………………….5

Argument………………………………………………………………………..9

    **1.** The District Court Erred when it determined the officers were
entitled to qualified immunity on claims of excessive force
under 42 U.S.C. 1983…………………………………………………………….9

    **2.** The District Court erred when it determined the officers were
entitled to statutory immunity on the state law claims pursuant
to F.S. 768.28(9)A………………………………………………………………16

    **3.** the district court erred in dismissing the negligence and negligent
training counts against the Miami-Dade County with prejudice……....18

Conclusion…………………………………………………………………………..21

Certificate of Compliance…………………………………………………………....22

Certificate of Service………………………………………………………………..22

# Table of Citations

**CASES**

Autery v. U S, 992 F. 2nd 1523 (11th Cir. 1997) …………………………………19

Baxter v. Bracy, 140 U.S. 1862, 207 L. Edition 2nd 1069 (2020) ………….… 11,12

Blue v. Miami-Dade County, 2011 WL 2447699………………………….......17

Bryant v. Mascara, 723 Fed. App. 793……………………………………………16

Crosby v. Monroe, 394 F.3d 1328 (11th Cir. 2004)………………………………16

Echevarria de Pena v. United States, 2013 WL 616932………………………….20

Foster Logging v. U.S., 973 F.3d 1152 (11th Cir. 2021)…………………………..

Glassco v. Argo, 903 F.3d 1207, 2018 U.S. App. LEXIS 25839…………………13

Graham v. Connor 490 U.S. 386, 109 S. Ct 1865 ( U. S. 1989) …………7,10,11

Graves v City of Miami, 2014 U.S. Dist. LEXIS 1888874………………………..21

Gregory v. MDC, 86 F. Supp. 3d 1340, affirmed,
719 Fed. Appx 859, 2017 U. S. App. Lexis 22903………………………………..17

Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008)………………………17

Helm v. Rainbow City, 989 F.3d 1265(11th Cir. 2021)……………………………

Hope v. Pelzer, 536 U.S. 730 (2002)**………………………………………16**

Hughes v. U.S., 110 F.3d 765( 11th Cir. 1997

Ingram v. Kubik, 30 F. 4th 1241 (11th Cir.2022)…………………………..10,14,15

Kaisner v. Kolb, 543 So.2d 732( Fla. 1989)……………………………………16,21

<u>Kisela v. Hughes</u> 138 S Ct 1148 2018 *per curiam*……………………………………16

<u>Lee v. Ferraro</u> , 284 F. 3d 1188 (11th Cir. 2002) ………………………….…..13

<u>Lewis v. City of St. Petersburg</u>, 260 F.3d 1260 (11th Cir. 2011)………………...20

<u>Martinez v. MDC</u>, 2013 U. S. Dist. Lexis 6437…………………………………19

<u>McCoy v. Alamu,</u> 144 U.S. 1364(2021)………………………………………….12

<u>Montanez v. Carvajal</u> , 2016 WL 231213( M. D. Fla. 2016)……………………..17

<u>Oliver v. Fiorino</u> 586 F.3d 898( 11th Cir. 2009)…………………………………..16

<u>Pearson v. Callahan</u>, 555 U.S. 223 (2009)………………………………………...11

<u>Perez v. Suszczynski</u>, 809 F.3d 1213) (11th Cir. 2016)…………………………..12

<u>Peterson v. Pollack,</u> 290 So. 3rd 102(4th DCA 2020),
2020 Fla. App. LEXIS 1751, 2020 WL 698703…………………………………..18

<u>Piazza v. Jefferson Cty,</u> 923 F. 3rd 947 (11th Cir 2019)…………………….…...15

<u>Plumhoff v. Rickard</u> 572 U.S. 765………………………………………………..16

Prosper v Martin, 989 F.3d 1242 (11th Cir. 2021)……………………………..12

<u>Ramirez v. Gaudarrama</u>, 2 F. 4th 506 (5th Cir. June 2021)………………………...12

<u>Rincon v. Miami-Dade Cty.,</u> 2022 U.S. Dist. LEXIS 102680……………….........12

<u>Saucer v. Katz,</u> 533 U.S. 194 (2001) ……………………………………………..10

<u>Sebastian v. Ortiz,</u>918 F.3rd 1301(11th Cir.2019)………………………………...16

<u>Singletary v. Vargas</u>, 804 F. 3rd 1174(11th Cir. 2015)……………………………15

<u>Strong v. Perrone</u> 2020 U. S. Dist. LEXIS 51816………………………..……….14

Taylor v.  Rojas, 592 U.S. 2020…………………………………………………..12

Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694(1985)…………………….…10,11

Tillis v Brown, 2021 U.S App. LEXIS 26863…………………………………12

Thomas v. City of Jacksonville, 215 U.S. Dist. LEXIS 190550…………………..21

United States v. Gaubert, 499 U.S. 315…………………………………………...19

White v. Pauly 137 S Ct 548 2017 per curiam …………………………………...16

Ziglar v. Abassi, 137 U.S. 1843, 2017 U.S. LEXIS 3874………………………...11

Law Review Article

"William and Mary Law Review Vol. 64 Issue 3, Article 6,"  Qualified

Knowledge: The Case for Considering Actual Knowledge in Qualified

Immunity Jurisprudence" 2-2023…………………………………………………6

# Jurisdictional Statement

1.  The United States District Court for the Southern District of Florida had subject matter jurisdiction pursuant to 28 U.S.C. 1331 for civil rights claims against the appellees. The civil rights claims alleged 42 U.S.C. 1983 violations of appellant's rights under the Fourth Amendment to the Constitution of the United States. The District Court had jurisdiction to hear state law claims pursuant to 28 U.S.C. 1367.

2.  The court has jurisdiction over the final order dismissing the case with prejudice. It is an issue of law whether an official's alleged conduct violated a clearly established constitutional right and is entitled to qualified immunity and statutory sovereign immunity.

3.  On January 10, 2023, the District Court entered an order dismissing the case with prejudice. On February 9, 2023, a notice of appeal was timely filed by appellant.

4.  On January 10, 2023, the district court entered an order dismissing all claims with prejudice.

**Statement of the Issues Presented for Review:**

1.  Whether the District Court erred in determining the officers who shot the dog

    are entitled to qualified immunity

2.  Whether the District Court erred in dismissing the negligence and negligent

    training counts against Miami-Dade County based upon sovereign immunity.

3.  Whether the District Court erred in dismissing appellant's claims with prejudice?

## Statement of the Case

This appeal involves the District Court granting Appellees' Motions to Dismiss on the basis of qualified immunity under federal law, and sovereign immunity pursuant to Florida Statute 768.28(9)a. Additionally the District Court granted a Motion to Dismiss state court claims for negligence and negligent training against Miami-Dade County with prejudice because of the discretionary functions exception of sovereign immunity.

In early October 2020 Plowright called the Miami-Dade Police Department to investigate a trespass on his neighbor's property. Officers Rondon and Cordova approached Plowright's dimly lit front door, and immediately upon seeing Plowright open the door, drew weapons screaming "show me your hands". Niles, appellant's dog, began to bark while the officers were screaming. The officers pointed guns, and the Taser red laser light at the dog's head. Several officers screamed for Plowright to get his dog, as the weapons were trained on them. As the dog barked and approached the officers, suddenly one officer Tased the dog, and the other shot the dog dead.( Doc. No. 1, pg. 12). The officers' body camera video captures the deadly use of force upon Niles.

The local news station, WSVN Channel 7, covered the story, and noted the number of dogs killed by police in Miami-Dade County since 2018. The reporter

interviewed people who believed their dogs were shot for no reason. One former leader in the Florida Sheriff Association noted that people's pets are like family and shooting a dog is traumatic. The reporter noted that Miami-Dade County is one of the largest police departments in the county and standard dog training is lacking. Miami Dade Police Major Carlos Gonzalez is quoted , "We wanted to bring in experts, so we can develop curriculum that we can utilize on our own and put it out consistently." (Doc. No.1, pg. 45).

Plowright filed a complaint alleging violation of 42 U.S.C. 1983 for use of excessive force, negligence, negligent training and intentional infliction of emotional distress against the officers, Police Chief and Miami-Dade County. A motion to dismiss was filed for all defendants (Doc No. 7, pg. 21). The appellant amended his complaint (Doc.No.9), and another motion to dismiss was filed (Doc. 13, pg.47; Doc. No. 23, pg. 71). Additionally, appellees filed a motion to file body camera video ( Doc. No.22, pg. 66) which appellant opposed for purposes of the motion to dismiss.( Doc. No.23, pg. 68). The court never ruled on the admissibility of the video, however agreed with the officers that they were entitled to qualified and sovereign immunity. (Doc. No.49, pg.49). The dismissal was entered with prejudice. The claims against the county were also dismissed, with leave to amend, and the third amended complaint (Doc No. 50, pg. 121) was dismissed for failure to

state a claim and discretionary function exception to sovereign immunity ( Doc. No. 62 pg. 153).

## Summary of Argument

There have been many criticisms of the doctrine of qualified immunity on several fronts. Justice Thomas has consistently questioned the Court's qualified immunity jurisprudence as dramatically removed from its common law kin. Its practical application does not achieve its policy objective of shielding officers from financial ruin, since government pays any legal costs and judgment rendered. The immunity is predicated upon the desire to only hold officers accountable when the law is clearly established. Over time it has been observed that the level of specificity required for the law to be clearly established has created an absolute shield for officers and renders the fourth amendment designed to protect citizens an empty shell. But most importantly, if no court addresses the constitutional merits of the challenged conduct, the violation will never be clearly established. A recent law review article pointed out how the advent of cellphone videos has revealed officers conduct in unfavorable lights. Some officers have reacted arresting the witnesses videotaping questionably unreasonable conduct. If the witness sues the officer, and no court has clearly established the citizen's right to video public conduct, then an officer can claim the right is not clearly established, and he is immune from suit. See "William and Mary Law Review Vol. 64 Issue 3, Article 6," Qualified Knowledge: The case for considering Actual Knowledge in Qualified Immunity Jurisprudence"

Plowright called the police about a neighborhood concern and was greeted with guns drawn at his doorstep. His family pet was with him and barking due to the police screaming get your dog. Plowright didn't move quickly enough, and they killed his pet who was not aggressive and loved in the neighborhood. Dogs bark all the time, but it was unreasonable to kill his pet. This is either willful overreaction, malicious wanton misconduct, or just plain wrong. Plowright committed no crime, was not resisting any arrest, and feared for his life with weapons drawn pointing in his direction. The Taser was directed in the dog's face and the screaming by the officers tantamount to taunting. To deploy the Taser and then shoot the little dog is an unreasonable seizure prohibited by the Constitution.

To be sure, the fourth amendment is to protect citizens from excessive government oppression. This is not a case about a split-second decision by two officers investigating a citizen's complaint where life threatening danger faced them. The Supreme Court has acknowledged the calculus of reasonableness must embody allowance for the fact that officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving about the amount of force necessary in a particular situation. Graham v. Connor 490 U.S. 386, 109 S. Ct 1865 (U. S. 1989). Even though qualified immunity is total immunity from suit, it is not automatically appropriate.

The officers here are not entitled to qualified immunity on claims of excessive force. Applying the objective reasonableness test, a reasonable officer in their position would not have believed deadly force was necessary. Plowright has demonstrated a constitutional right was violated, and the district court failed to properly consider the reasonableness of the use of deadly force and failed to consider the immediacy of the alleged threat the dog presented.

This circuit has made it clear that gratuitous use of force is not to be tolerated, and the lower court based its analysis on general propositions instead of applying the fact intensive analysis that qualified immunity standards require. The officers are not entitled to sovereign immunity because their actions were arguably evidence of bad faith or willful disregard of property, to wit, Plowright's dog Niles. It is abundantly clear to the appellant that this case could be viewed as so insubstantial that it does not even deserve consideration by this court. However, appellant is a poor man without much in his life. Dog is a man's best friend, and his relationship of great importance. Surely all pet owners can see the emotional ties which provide some source of solace in the technologic world where AI, Tik Tok and Instagram have substituted for intimate connection. Sadly, it appears that these United States recognize rights in one section of the country but denies them in another. Questions of equal justice under the law abounds in our jurisprudence.

The claims for negligence and negligent training were sufficiently pled, and

The claims for negligence and negligent training were sufficiently pled, and augmented by statements of the county which conclude implementation of the policy was not done. In terms of negligence the court did not properly conclude that the shooting of the dog was a question of law and removed from the finder of fact. As for the negligent training count, the District Court prematurely decided the discretionary function exception applied for purposes of the motion to dismiss. The analysis of the District Court seemingly failed to consider the operational nature of the officer's actions omitting consideration of operational activity and public policy. Surely the county had failed to implement the policy which precluded shooting residents pets, who were not a threatening danger.

**Argument**

**1. THE DISTRICT COURT ERRED WHEN IT DETERMINED THE OFFICERS WERE ENTITLED TO QUALIFIED IMMUNITY ON CLAIMS OF EXCESSIVE FORCE UNDER 42 U.S.C. 1983.**

It is submitted the officers are not entitled to qualified immunity on the claims of excessive force, and the standard of review is *de novo* for a District Court's determination granting officers qualified immunity, and a motion to dismiss pursuant to F.R.C.P. 12 (b) 6. Ingram v. Kubik, 30 F. 4th 1241 (11th Cir.2022). The court must construe the complaint in the light most favorable to the plaintiff. Here the conduct of the officers violated the Fourth Amendment. The use of deadly force must be considered by balancing the nature and quality of the individual's right to be free from government intrusion, and the governmental interest at stake. Graham, *supra*. The court considers whether there is probable cause to believe there was a serious threat of physical harm to the officer, and was deadly force required to prevent the suspect's escape. Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694(1985).

The officers' initial burden is to prove they were engaged in a discretionary function that fell within the employees job responsibilities. Crosby v. Monroe, 394 F3d 1328 (11th Cir.2004). Then a two-step analysis is performed to determine entitlement to qualified immunity. The United States Supreme Court explained in Saucer v. Katz, 533 U.S. 194 (2001) that the appellant must show a constitutional

right has been violated. The objective reasonableness test is used for claims of excessive force under the Fourth and Fourteenth amendments. See Graham v. Connor, *supra.* Under this analysis the subjective intent of the officers are not controlling. Once the courts determine there is a constitutional violation the focus shifts to the question of notice to the officers that their conduct violated clearly established law. *Id.* These principals are designed to shield the officers from personal liability when they reasonably believe their conduct comports with the law. Pearson v. Callahan, 555 U.S. 223 (2009). Qualified immunity protects all but the plainly incompetent or one who knowingly violates federal law.

Application of this doctrine has been rife with imprecision to say the least. One size fits all isn't easy. This judicially created affirmative defense has been questioned by some of the most conservative judicial icons. Justice Thomas in the dissent about the application of qualified immunity, and in several opinions since 2017, has called the doctrine into question. In 2020 he wrote in his dissent from the denial of granting certiorari reaffirming his strong doubts about the qualified immunity doctrine. Baxter v. Bracy, 140 U.S. 1862, 207 L. Edition 2nd 1069 (2020). Consistently the justice opined "in the right case we should reconsider our one size fits all test or the judicial doctrine of qualified immunity more generally." And See J. Thomas concurrence, Ziglar v. Abassi, 137 U.S. 1843, 2017 U.S. LEXIS 3874. Justice Thomas has also pointed out the "clearly established" standard in not part of

42 U.S.C.1983 statute. <u>Baxter</u>, *supra*. Across the country other circuits have acknowledged the obvious flaws of this immunity. In a dissent from denial of an *en banc* hearing of a case where police burned a man to death who was soaked in gasoline when tased, one judge concluded the obviousness of the unconstitutional actions was axiomatic. See <u>Ramirez v. Gaudarrama</u>, 2 F. 4th 506 (5th Cir. June 2021) Judge Willet's dissent. Most importantly the Supreme Court reversed Fifth Circuit applications of qualified immunity as inappropriate. See <u>Taylor v. Rojas, 592 U.S. 2020; McCoy v. Alamu, 144 U.S. 1364(2021)</u> Most recently dissent from the application of qualified immunity justification of use of deadly force has echoed in this circuit. See <u>Tillis v Brown</u>, 2021 U.S App. LEXIS 26863, (dissent Judge Pryor). Appellant submits the problems with qualified immunity analysis has led to many confusing results which diminishes citizens confidence in the courts.

The officers shot the dog for barking and this is clearly a violation of pet owners rights under the 4th amendment.

"Plaintiffs may show that a right was "clearly established" through: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, [*35] or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Prosper*, 989 F.3d at 1251 (quoting *Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016))." See, <u>Rincon v. Miami-Dade Cty., 2022 U.S. Dist. LEXIS 102680.</u>

Appellant submits that shooting the dog was objectively unreasonable and

unconstitutional seizure under the Fourth Amendment even in the absence of case law peculiar to pets.

Again, pursuant to Graham, *supra.* the court must consider many relevant factors to evaluate the reasonableness of the officers force. Included among them are the immediate threat to the safety of the officers, the need for the application of force, the relationship between the need and the amount of force used, and the extent of the injury inflicted. Glassco v. Argo, 903 F.3d 1207, 2018 U.S. App. LEXIS 25839 (citing the obvious clarity rule), Lee v. Ferraro , 284 F. 3d 1188 (11th Cir. 2002). In this case the court did not properly consider these factors, nor the body camera video which the government urged the court to observe. The officers acted unreasonably when they Tased the dog and then killed him. The relationship  between the need and amount of force are way out of proportion. This court must take particular note of the fact that Plowright committed no crime, nor was he resisting any arrest. The District Court seemingly assumed *a priori* that the amount of force, killing the dog, was required, and that was improper. Clearly there is a distinction between risk and threat. Most assuredly in this case the officers were not threatened, but rather were the aggressors.

In this circuit shooting an unarmed person who is not resisting, or threatening is clearly unreasonable, and such conduct is not immunized. My research has not revealed a case where these general principles  have been applied to citizens property

*i.e.* his pet, but surely the same reasoning should apply. In the case of <u>Strong v. Perrone</u> 2020 U. S. Dist. LEXIS 51816 the court noted that the unreasonable killing of a companion animal constitutes an unreasonable seizure of personal property under the fourth amendment. In that case the court denied a Motion for Summary Judgment because there was an issue as to the reasonableness of the killing.

The District Court acknowledged that the immunity should be denied if the constitutional right is one every reasonable officer should have known. Appellant submits every reasonable officer would avoid shooting a citizen's pet. At least one case has touched on this principle, albeit in another circuit, and this court has an opportunity to embrace or reject the concept. <u>Strong</u>, *supra*.

In Kubik, *supra*. this court affirmed immunity for unlawful seizure, but not for excessive force. "The correct legal standard to evaluate whether an officer had probable cause to seize a suspect is to ask whether a reasonable officer could conclude there is a substantial chance of dangerous behavior."  There the officers were dealing with a person with known mental health issues, and who had already engaged in suicidal action slicing his wrist with a knife. The claim for qualified immunity was denied on the excessive force claim because there was neither a crime committed, nor a threat to the officers. The officer body slammed and broke Ingram's neck requiring surgery. This court concluded the force used was not proportionate to the need for force. Since 2000 this court has recognized the principle

that "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force. <u>Kubik</u>, *supra*. citing <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1330 (11th Cir. 2008)

Here the District Court cited to <u>Piazza v. Jefferson Cty,</u> 923 F. 3rd 947 (11th Cir. 2019) which is a prisoner rights case where qualified immunity was denied. There the court reiterated the right to be from excessive force in a case where prisoner was Tased multiple times after he was rendered helpless. Similarly, Plowright's right to be free from unreasonable seizure was violated when his dog was Tased, rendered helpless and then killed. The objective reasonableness test does not justify the officers' escalation of the situation, ultimately killing Niles. The facts of the case show violation of clearly established constitutional rights.

The jurisprudence of this circuit looks at law enforcement probable cause and arrest. This case involves neither, so the issue needs to be framed differently. At the motion to dismiss stage, where there is body camera evidence, it is submitted appellant should be given an opportunity to test the completeness and reasonableness of the factual basis for the immunity. To be sure the officers are not paying the costs and the burden to the government is *de minimis*. From the videotaped evidence use of deadly force, the District Court can see what is reasonable and what is not. Such evidence can confirm or discredit claims of excessive force and danger to the officer. <u>Singletary v. Vargas</u>, 804 F. 3rd 1174(11th

Cir. 2015). The protection for officers can only be afforded for reasonable mistakes, and shooting the dog was not reasonable. Here there is no probable cause or exigent circumstances to have reasonable beliefs about. The facts of this case should lean towards officer accountability in that there was no crime or threat presented at the Plowright home. The robust consensus of cases is not vague, and the use of deadly force violates the bright line when there is no threat to officers. It is unreasonable for every officer, and this court to infer that every dog is a threat.

Many cases involving split-second decisions in dangerous circumstances require granting immunity such as high-speed chases or shooting of armed individuals. See Kisela v. Hughes 138 S. Ct. 1148 2018, *per curiam*; White v. Pauly 137 S Ct 548 2017, *per curiam*; Plumhoff v. Rickard 572 U.S. 765. However, this court has held in Oliver v. Fiorino, 586 F.3d 898(11th Cir. 2009) multiple tasing was not reasonable, and qualified immunity was not appropriate. Similarly in this case, a little barking dog is not a threat justifying killing the family pet. Appellant submits this is a case of obvious clarity and reasonable officers know this. See Bryant v. Mascara, 723 Fed. App. 793, 796-797; Sebastian v. Ortiz, 918 F.3rd 1301(11th Cir.2019); Hope v. Pelzer, 536 U.S. 730 (2002) It is axiomatic that officers are not above the law, and the absence of a factually analogous case is no defense to the indefensible.

**2. THE DISTRICT COURT ERRED WHEN IT DETERMINED THE OFFICERS WERE ENTITLED TO STATUTORY IMMUNITY ON THE STATE LAW CLAIMS PURSUANT TO F.S. 768.28(9)A.**

In order for the officers to be held personally liable in tort there must be a showing that they acted, in this case, in a manner that exhibited willful and wanton disregard for safety or property. The court is the gatekeeper and dismisses cases where immunity is granted. Immunity is denied where the court finds the conduct was willful and wanton disregard of property. Montanez v. Carvajal , 2016 WL 231213( M. D. Fla. 2016) The District Court cited the case of Blue v. Miami-Dade County, 2011 WL 2447699 (conduct involved 5 year kicked in the face) to conclude the court may decide the issue of intent as a matter of law, and that the officers here were entitled to statutory immunity. However, this court has held "For conduct to be willful and wanton, it must be shown that the defendant knew, or reasonably should have known in light of the surrounding circumstances, that his conduct would naturally or probably result in injury, and with such knowledge, disregarded the foreseeable injurious consequences. Gregory v. MDC, 86 F. Supp. 3d 1340, affirmed, 719 Fed. Appx 859, 2017 U. S. App. Lexis 22903. In Gregory the court determined there was a genuine issue of material fact as to whether self-defense was necessary, and sovereign immunity inappropriate. Here the facts are well pled and sovereign immunity is likewise inappropriate.  Similarly, Plowright has alleged his dog was tased and then shot which, granting him all reasonable inferences, could

have been a willful and wanton disregard for property especially when Plowright

was not resisting, nor committing a crime and was merely standing in the doorway

of his home. The officer shooting the dog at a minimum knew his conduct was going

to kill the dog.  Therefore, qualified immunity was not proper for both officers.

This statutory immunity has been denied in the Fourth District Court of

Appeal for the State of Florida in <u>Peterson v. Pollack,</u> 290 So. 3rd 102(4th DCA 2020),

2020 Fla. App. LEXIS 1751, 2020 WL 698703. There the allegation  against the

officer involved the Parkland shooting. The state court decided  sufficient facts had

been plead to defeat immunity. There the facts were taken as true, however the facts

in the instant case were deemed insufficient, and it appears not taken as true.

Your appellant understands and acknowledges this is not the run of the mill

case, however it is quite a substantial matter for Mr. Plowright. The court gatekeeper

dismissed his case without even reviewing the video the county submitted for

review. Surely the court is limited to the 4 corners of the complaint but where there

is video, justice ought to give an opportunity to see if  a reasonable trier of fact could

find that the officers' alleged conduct was in bad faith.  The allegations in this case

do not involve an arrest or any criminal conduct on the part of Plowright, nor a threat

threat to them.  In <u>Blue,</u> *supra.* the case involved kicking a 5 year old in the face,

and such conduct was so egregious. Here the shooting of the dog cannot compare to

the facts of Blue, but at this stage of the litigation, the court should not have

dismissed the case nor granted statutory relief. See, <u>Martinez v. MDC</u>, 2013 U. S. Dist. Lexis 6437(court held reliance on <u>Blue</u> was misplaced)

## 3. THE DISTRICT COURT ERRED IN DISMISSING THE NEGLIGENCE AND NEGLIGENT TRAINING COUNTS AGAINST THE MIAMI DADE COUNTY WITH PREJUDICE

The dismissal of the negligence counts against Miami-Dade County were not based upon a proper analysis of the case law. The District Court cites to federal cases dealing with Federal Torts Claim Act cases to decide the instant case. In dismissing the counts against Miami-Dade County, the District Court cited to the case of <u>Autery v. U S,</u> 992 F. 2nd 1523 (11th Cir. 1997) as controlling in this case. That case involved a FTCA claim based upon a tree falling in the forest and killing the driver of a vehicle in a national park. The court determined the complaint about maintaining trees involves a discretionary function, and therefore the federal court lacked jurisdiction. This circuit stated "it is the nature of the conduct, rather than the status of the actor, that determines whether the discretionary function exception applies." <u>Autery</u> *supra*. Moreover, that court cited to the Supreme Court case of <u>United States v. Gaubert,</u> 499 U.S. 315 which required challenged conduct undergo a two-pronged analysis to determine if government action fell outside of the discretionary function. The first inquiry involves the issue of whether there is an element of choice, and the second issue is was it susceptible to policy analysis. The court determined no policy

governed inspection of trees, and then analyzed the second prong of the discretionary function exception, to wit, whether the governmental choices were grounded in social, economic, and public policy.

The District Court also relied upon the case of <u>Echevarria de Pena v. United States</u>, 2013 WL 616932 for the proposition that training is a discretionary function. This is another FTCA case and the same two-pronged analysis was required to include consideration of whether judgement is grounded in public policy. Lastly the court also cited to <u>Lewis v. City of Petersburg, 260 F 3d 1260 (11th Cir. 2011)</u> for authority to support dismissal of the negligent training count.

"Lewis, however, does not challenge the prudence of the officers' discretionary decision whether to arrest or detain, rather, she challenges the manner in which the officers [**13] implemented that decision. Under Florida law, when an officer has made an initial discretionary decision to conduct a stop and then proceeds to carry out that decision, the officer is no longer exercising a "discretionary" function, but is engaged in an "operational" task. *Kaisner,* 543 So. 2d at 734, 737-38. In this case, the officers, having decided to stop Lewis, had an obligation to proceed with reasonable care. Lewis alleges that they breached this duty and that this breach caused the death of TyRon Lewis. Thus, the district court erred in dismissing Lewis's negligent use of a firearm claim". See <u>Lewis v. City of St. Petersburg</u>, 260 F.3d 1260 (11th Cir. 2011)

Similarly, Plowright seeks to challenges the manner in which the officers implemented the decision to use the weapons, Taser and firearms. The complaint clearly alleges the County was negligent in the implementation of the policy regarding dealing with pets. Plowright's complaint included reference to the high-

ranking government officials statement that the policy was not implemented properly. The lower court clearly omitted that admission in its analysis of the discretionary versus operational classification. Giving plaintiff the benefit of inferences, the county admits to implantation issues. Miami-Dade Police Major Carlos Gonzalez says: "We wanted to bring in experts, so we can develop a curriculum that we can utilize on our own and put it out consistently." This statement adds to the operational function of training which precludes dismissal. Arguably there was a policy which could have been implemented better.

When the officers approached Plowright's home with guns drawn this moved to operational activity creating a zone of danger. Thomas v. City of Jacksonville, 215 U.S. Dist. LEXIS 190550. The manner in which the officers execute the policy of citizen contact is an operational function. See Kaisner v. Kolb, 543 So.2d 732 (Fla. 1989). Here analysis of the discretionary function exception is woefully inadequate and must be reversed.

And lastly it is submitted dismissal with prejudice was error since the complaint could have been amended. Florida recognizes a cause of action for negligent handling of a firearm and negligent decision to use a firearm. Graves v. City of Miami, 2014 U.S. Dist. LEXIS 1888874. Dismissal with prejudice is appropriate only where no set of facts could afford plaintiff relief. Clearly the police owed Plowright a duty of care once they approached his home with weapons drawn.

The manner in which the officers exercised their decision to shoot is challenged here. Similarly, Plowright challenges the decision of the officers to kill his dog and submits dismissal with prejudice is reversable error.

## Conclusion

Appellant respectfully requests that this court reverse the decision dismissing the case with prejudice to the extent it granted the defense of qualified immunity and sovereign immunity prematurely. This case should allow for discovery, or the Fourth amendment protections to the citizens will be meaningless.

Date: March 21, 2023

/s/ William C. Robinson
WILLIAM C. ROBINSON, ESQ
Florida Bar No: 386847
Attorney for Appellant
P. O. Box 61075
North Miami FL 33261
Tel: 305-454-9632
Fax: 754-764-2266
E-mail: robinsonwilliam8@gmail.com

*Attorney for Appellant Sylvan Plowright*

## Certificate of Compliance

This brief complies with the type volume limitation of Fed. R. App. P. 32(a) 7(b) because this brief contains 5780 words, excluding the parts of the brief exempted by Fed. R. App. P 32(a)7(B)iii.

## Certificate of Service

I hereby certify that on this March 21 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record for service via transmission of Notices of Electronic filing generated by CM/ECF.