[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10425

_____

SYLVAN PLOWRIGHT,

                                                    Plaintiff-Appellant,

*versus*

MIAMI DADE COUNTY,
a Political subdivision of the State of Florida,
L. RONDON,
 Miami-Dade Officer #6384,
A. CORDOVA,
Miami-Dade Officer #4282,
CHIEF ALFREDO RAMIREZ, III,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-20203-KMM

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and MARCUS,
Circuit Judges.

JILL PRYOR, Circuit Judge:

Sylvan Plowright sued Miami-Dade County, its police chief, and two of its police officers after one of those officers, Sergio Cordova, fatally shot Plowright's dog, Niles, at the scene of an investigation. The district court dismissed Plowright's complaint, concluding among other things that Cordova was entitled to qualified immunity because he did not violate any clearly established right when he shot Niles.

We disagree. Addressing a matter of first impression in this Circuit, we hold that the use of deadly force against a domestic animal constitutes a seizure of its owner's property subject to the Fourth Amendment's reasonableness requirement. Because, under the facts alleged in the complaint, no reasonable officer in Cordova's position could have believed that Niles posed an imminent danger, his decision to shoot Niles falls short of that requirement. And despite the "novel factual circumstances" described in Plowright's complaint, *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), this is one of the rare cases in which the unconstitutional nature of Cordova's

actions was clearly established to the point of obvious clarity, even in the absence of directly-on-point caselaw.

We therefore reverse the dismissal of Plowright's § 1983 claim against Cordova and remand for further proceedings consistent with this opinion. We also reverse the dismissal of Plowright's claim for intentional infliction of emotional distress against Cordova. But we affirm the dismissal of Plowright's intentional-infliction-of-emotional-distress claim against a second officer, as well as his claims against the county and its police chief.

## I.    BACKGROUND

The facts alleged in this case are simple. Plowright, a resident of Miami-Dade County, called 911 to report someone trespassing in the vacant property near his home. Miami-Dade police officers Leordanis Rondon and Cordova responded to the call, approaching Plowright's front door "through a dimly lit driveway." Doc. 9 at 3.[1] As Plowright came out to greet the officers, they drew their guns and "immediately began shouting" at Plowright to show them his hands. *Id.* When Plowright's dog Niles, an "American Bulldog weighing less than 40 pounds," entered the scene, the officers ordered Plowright to get control of him. *Id.* at 3–4. Before Plowright did so, Rondon fired his taser at Niles, sending him "into shock." *Id.* at 4. Then, "[a]fter the dog was already down from the [t]aser," Cordova "fired at least two shots from his gun, killing the dog for

---

[1] "Doc." refers to the district court's docket entries.

no reason." *Id.* The officers then ordered the "emotionally devast[ated]" Plowright to the ground as Niles "laid dying." *Id.*

Afterward, Plowright sued in federal court. He later filed an amended complaint with leave from the court. The amended complaint asserted claims for "unreasonable seizure through excessive force" pursuant to 42 U.S.C. § 1983 against Cordova (Count One), intentional infliction of emotional distress against Rondon and Cordova (Counts Two and Three), negligence and negligent training and supervision against the county (Counts Four and Five), and negligent supervision against Miami-Dade Police Chief Alfredo Ramirez (Count Six). *Id.* at 6–9.

The district court dismissed Plowright's amended complaint. First, the court concluded that Cordova was entitled to qualified immunity on the excessive force claim, reasoning that Plowright had failed to cite any "Supreme Court or Eleventh Circuit authority holding that an officer shooting a dog amounts to a constitutional violation."[2] Doc. 49 at 7. Second, the court concluded that the intentional-infliction-of-emotional-distress claims against Cordova and Rondon, as well as the negligent supervision claim against Ramirez, were barred by state statutory immunity because the complaint did not allege facts suggesting that these defendants

---

[2] Along with their motion to dismiss, the officers submitted a flash drive containing body camera footage of the shooting. The district court declined to consider that footage, concluding that Cordova was entitled to qualified immunity even if Plowright's version of events were true. Because the video footage does not appear in the record, we too do not consider it.

"acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.* at 7–8 (quoting Fla. Stat. § 768.28(9)(a)). Third, the court dismissed both claims brought against the county, referring to Counts Four and Five as "quintessential shotgun pleadings in violation of Rule 8(a)(2)." *Id.* at 9. The claims against the individual defendants were dismissed with prejudice, but the court granted Plowright seven days to amend his claims against the county.

Plowright timely filed a second amended complaint, re-pleading (in nearly unchanged form) his claims for negligence and negligent training and supervision against the county. To bolster these claims, Plowright attached a news article identifying five family pets—including Niles—that Miami-Dade police officers had shot since 2018. The article reported that the Miami-Dade Police Department had no "standard dog training program" and quoted a senior officer from the department affirming his desire to "bring in experts" to "develop a curriculum that we can utilize." Doc. 50-1 at 1–2 (internal quotation marks omitted).

The district court found Plowright's second amended complaint still lacking. The court once again dismissed the claims against the county—this time with prejudice—and directed the clerk to close the case.

This is Plowright's appeal.

## II.    STANDARD OF REVIEW

This Court reviews *de novo* "a district court's dismissal of a complaint with prejudice for failure to state a claim," "accept[ing]

the factual allegations in the complaint as true, [and] construing them in the light most favorable to the plaintiff." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019) (en banc). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## III.    DISCUSSION

We proceed in three parts. First, we consider whether the district court erred in dismissing Plowright's § 1983 claim against Cordova based on qualified immunity. Second, we address the district court's dismissal of Plowright's intentional-infliction-of-emotional-distress claims against Cordova and Rondon based on state immunity. Third, we consider the dismissal of Plowright's § 1983 claims against the county for failure to state a claim.[3]

## A.    Plowright's § 1983 claim against Cordova

"Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016). "To

---

[3] Plowright does not challenge the dismissal of his claim against Ramirez, and so we address it no further. *See United States v. Campbell*, 26 F.4th 860, 871 (11th Cir. 2022) (en banc) ("[I]ssues not raised in the initial brief on appeal are deemed abandoned.").

invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority." *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017). That term encompasses "all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Id.* (internal quotation marks omitted). If the official satisfies this requirement, the burden shifts to the plaintiff to demonstrate that qualified immunity is inappropriate. *See id.* To do this, he must have pled "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

Plowright does not challenge Cordova's assertion that he was acting within the scope of his discretionary authority when he shot Niles. Indeed, any such challenge would prove fruitless. This requirement is "readily satisfied" by "police officers conducting arrest and investigative functions" while on duty, *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019), and the complaint alleged that Cordova encountered Niles while responding to a 911 call. The only remaining questions, then, are whether Cordova's actions violated Plowright's Fourth Amendment right and whether that right was clearly established.

1.    Cordova's actions violated the Fourth Amendment.

The first question is whether Cordova's actions, as alleged in Plowright's complaint, violated the Fourth Amendment. Or,

stated another way: Does an official violate the Fourth Amendment when he uses deadly force against a domestic animal that is "incapacitated[] and incapable of harming anyone"? Doc. 9 at 6. The answer to that question is clearly "yes."

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure of property "occurs when there is a meaningful interference with a person's possessory interest" in it. *United States v. Virden*, 488 F.3d 1317, 1321 (11th Cir. 2007). We have never addressed the specific question whether shooting a domestic animal constitutes a seizure under the Fourth Amendment. Now, we join with almost every other circuit in holding that it does.[4] Two simple steps lead us to this result.

---

[4] *See Maldonado v. Fontanes*, 568 F.3d 263, 271 (1st Cir. 2009) ("The killing of a person's pet dog or cat by the government without the person's consent is also a seizure within the meaning of the Fourth Amendment."); *Carroll v. County of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013) ("[T]he unreasonable killing of a companion animal constitutes an unconstitutional 'seizure' of personal property under the Fourth Amendment."); *Brown v. Muhlenberg Township*, 269 F.3d 205, 210 (3d Cir. 2001) ("[T]he killing of a person's dog by a law enforcement officer constitutes a seizure under the Fourth Amendment."); *Altman v. City of High Point*, 330 F.3d 194, 203–05 (4th Cir. 2003) ("[T]he plaintiffs' privately owned dogs were 'effects' subject to the protection of the Fourth Amendment. . . . Thus, when the officers destroyed the dogs, they 'seized' the plaintiffs' 'effects.'"); *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 566 (6th Cir. 2016) ("[T]here is a constitutional right under the Fourth Amendment to not have one's dog unreasonably seized."); *Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008)

First, state law defines personal property, and Florida law, like the law of most states, is clear that domestic animals are their owners' personal property. *Barrow v. Holland*, 125 So. 2d 749, 751 (Fla. 1960). Even as living creatures—and often, beloved members of the family—domestic animals qualify as "effects" for the purposes of the Fourth Amendment. *See Altman v. City of High Point*, 330 F.3d 194, 202–04 (4th Cir. 2003) (noting that the Supreme Court "has treated the term 'effects' as being synonymous with personal property").

Second, shooting a domestic animal undoubtedly interferes with its owner's possessory interests, implicating the same analysis

---

("[T]he killing of a companion dog constitutes a 'seizure' within the meaning of the Fourth Amendment."); *LeMay v. Mays*, 18 F.4th 283, 287 (8th Cir. 2021) ("[W]hen an officer shoots and kills an individual's family pet when that pet presented no danger and when non-lethal methods of capture would have been successful[,] this is an unreasonable, warrantless seizure of property, in violation of the Constitution." (internal quotation marks omitted)); *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 966 (9th Cir. 2005) ("[T]he shooting of the dogs at the Vieira and Souza residences was an unreasonable seizure[] and an unreasonable execution of the search warrants[] in violation of the Fourth Amendment."); *Mayfield v. Bethards*, 826 F.3d 1252, 1256 (10th Cir. 2016) ("Killing a dog meaningfully and permanently interferes with the owner's possessory interest. It therefore constitutes a violation of the owner's Fourth Amendment rights absent a warrant or some exception to the warrant requirement."); *Robinson v. Pezzat*, 818 F.3d 1, 7 (D.C. Cir. 2016) ("[T]he killing of a companion dog constitutes a 'seizure' within the meaning of the Fourth Amendment." (quoting *Viilo*, 547 F.3d at 710)); *see also Jones v. Lopez*, 689 F. App'x 337, 339 (5th Cir. 2017) (holding in a non-precedential opinion that "an officer's shooting of a pet dog is in some circumstances a seizure under the Fourth Amendment").

applied to an official's destruction of other forms of property. *See United States v. Jacobsen*, 466 U.S. 109, 124–25 (1984) (holding that the destruction of cocaine during a field drug test constituted a "seizure" subject to the Fourth Amendment's objective reasonableness test because it "affect[ed] [the owners'] possessory interests"). To be constitutionally permissible, then, Cordova's decision to shoot and kill Niles must have been reasonable.

Generally, the seizure of personal property without a warrant is per se unreasonable. *Virden*, 488 F.3d at 1321. But not all law enforcement scenarios lend themselves to the use of a warrant. As with the practice of brief investigatory stops, "we deal here with an entire rubric of police conduct . . . which historically has not been, and as a practical matter could not be, subjected to the warrant procedure." *Terry v. Ohio*, 392 U.S. 1, 20 (1968). In such circumstances, "[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983). This "balancing of competing interests" is "the key principle of the Fourth Amendment," and it is aimed at one question: "whether the totality of the circumstances justified a particular sort of . . . seizure." *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985) (internal quotation marks omitted). Put differently, was the seizure "more intrusive than necessary"? *Florida v. Royer*, 460 U.S. 491, 504 (1983).

In the context of pet shootings by police, other circuits have navigated this question without issue. Balancing pet-owners'

strong property interests[5] against the state's own interest in "protecting [human] life," most circuits have acknowledged a "general principle that a police officer may justify shooting a dog . . . only when it presents an objectively legitimate and imminent threat to him or others." *LeMay v. Mays*, 18 F.4th 283, 287 (8th Cir. 2021) (internal quotation marks omitted); *see also Brown v. Muhlenberg Township*, 269 F.3d 205, 211 (3d Cir. 2001) ("[T]he state may [not], consistent with the Fourth Amendment, destroy a pet when it poses no immediate danger and the owner is looking on, obviously desirous of retaining custody."); *Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008) ("[T]he use of deadly force against a household pet is reasonable only if the pet poses an immediate danger and the use of force is unavoidable."); *Carroll v. County of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013) ("[I]n some circumstances[] it is reasonable for an officer to shoot a dog that he believes poses a threat to his safety or the safety of the community."). Today, we join our sister circuits in holding that an officer may not use deadly force against a domestic animal unless that officer reasonably believes that the animal poses an imminent threat to himself or others.

This case is at the pleadings stage, where we must accept the factual allegations in Plowright's complaint as true. When we do, we conclude that a reasonable officer in Cordova's position would not have believed he was in imminent danger when he shot Niles.

---

[5] After all, "[t]he emotional attachment to a family's dog is not comparable to a possessory interest in furniture." *San Jose Charter of the Hells Angels Motorcycle Club*, 402 F.3d at 975.

Although Niles was barking when the officers approached the residence, and he "sensed [the officers'] aggressive tone," he was "wagging his tail" when Rondon tased him and was "incapacitated" by the taser and "incapable of harming anyone" when Cordova fired the fatal shots. Doc. 9 at 3–4, 6. With these facts, Plowright has plausibly alleged that Cordova unreasonably seized Niles in violation of the Fourth Amendment.

Cordova concedes that he seized Plowright's property when he shot Niles and that the seizure is subject to the Fourth Amendment's reasonableness test. But, he argues, "the use of deadly force under the circumstances" was reasonable because Niles was barking and unrestrained. Appellees' Br. 17–18. Even though we cannot tell from the complaint when Niles stopped barking, Cordova's argument is unavailing. First, the fact that a dog is barking and unrestrained is hardly enough *by itself* to convince a reasonable officer that he is in imminent danger. Absent exigent circumstances, it would be unreasonable, for example, for an officer to deploy deadly force against a dog that is barking from a safe distance away, from behind a barrier, or while moving away from any potential victims. Second, Cordova's argument ignores the full extent of Plowright's allegations. Although the amended complaint says that Niles was barking at some point during the incident, the dog was "incapacitated[] and incapable of harming anyone" when Cordova fatally shot him. Doc. 9 at 6. Accepting these allegations as true— as we must at this stage—Niles posed no danger to Cordova or anyone else when he was shot. Cordova's decision to shoot him thus

was unreasonable and violated Plowright's Fourth Amendment rights.

    2.      The right in question was clearly established.

Plausibly alleging a constitutional violation is insufficient on its own to overcome qualified immunity. Plowright must also show that the right in question was "clearly established at the time of the challenged conduct." *Ashcroft*, 563 U.S. at 735 (internal quotation marks omitted). "A right can be clearly established either by similar prior precedent, or in rare cases of obvious clarity." *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015) (internal quotation marks omitted). In either case, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable state official that his conduct was unlawful in the situation he confronted." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (alteration adopted) (emphasis omitted) (internal quotation marks omitted).

Plowright concedes that there is no case in the Supreme Court, this Circuit, or the Supreme Court of Florida with "indistinguishable facts" establishing that Cordova's actions violated his Fourth Amendment rights. The Supreme Court has made clear, however, that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741. In such cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Id.* (alteration

adopted) (internal quotation marks omitted) (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)).

Here, a reasonable officer would have known that it was unlawful to shoot Niles under the circumstances alleged in the complaint—even without caselaw directly on point. Even a cursory reading of *Barrow* and *Jacobsen* reveals that shooting a domestic animal amounts to a seizure, meaning that it is subject to the Fourth Amendment's reasonableness requirement. *See* 125 So. 2d at 751; 466 U.S. at 113, 124–25. And, because the "nature and extent" of such a seizure is so serious, *Place* tells us that it can be justified only by significant countervailing government interests. 462 U.S. at 703. Although it is true that "a general standard such as 'to act reasonably'" will seldom "put officers on notice that certain conduct will violate federal law" given the "intensely fact specific" nature of the inquiry, the facts alleged in Plowright's complaint take Cordova's actions "well beyond the 'hazy border' that sometimes separates lawful conduct from unlawful conduct." *Evans v. Stephens*, 407 F.3d 1272, 1283 (11th Cir. 2005) (en banc).

Even without these cases, however, Cordova's conduct was "so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of [his] conduct" should have been "readily apparent to [him], notwithstanding the lack of case law." *Jones*, 857 F.3d at 852 (alteration adopted) (internal quotation marks omitted). Just as "no reasonable officer could ever believe that it was appropriate" to tase a compliant, non-threatening bystander at the scene of an arrest, *Fils v. City of Aventura*, 647 F.3d 1272, 1276–

77, 1292 (11th Cir. 2011), no reasonable officer could ever believe that it was appropriate to shoot an incapacitated, non-threatening domestic animal during a 911 investigation. Although the officers' bodycam footage or other evidence may later introduce facts that take this case outside of the "narrow" obvious clarity exception, Cordova's conduct as described in Plowright's complaint was "so bad that case law is not needed to establish that the conduct cannot be lawful." *Jones*, 857 F.3d at 852 (internal quotation marks omitted). The constitutional right in question thus was clearly established.

Because Plowright's allegations satisfied both requirements of the qualified immunity inquiry, the district court erred in dismissing his § 1983 claim against Cordova.

**B.    Plowright's intentional-infliction-of-emotional-distress claims against Rondon and Cordova**

In Counts Two and Three of his amended complaint, Plowright sued Rondon and Cordova, respectively, for intentional infliction of emotional distress under Florida law. The officers argue that these claims were rightfully dismissed for two reasons: first, because the complaint failed to state a valid claim for intentional infliction of emotional distress, and second, because they were immune from liability under state law. The officers are correct that the claim was properly dismissed against Rondon. However, the claim against Cordova must be allowed to proceed. Below, we discuss first the claim against Cordova and then the claim against Rondon.

1.    The amended complaint stated a valid claim for
      intentional infliction of emotional distress against
      Cordova.

To state a valid claim for intentional infliction of emotional distress under Florida law, a plaintiff must plausibly allege the following elements: "(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015). Cordova does not dispute that Plowright adequately alleged that the officers' intentional or reckless conduct in tasing and shooting his dog caused him emotional distress. Instead, Cordova argues that the conduct alleged was not sufficiently outrageous to state a claim under Florida law and that Plowright's distress was not sufficiently severe. Both arguments come up short.

In Florida, "[w]hether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law" to be decided by the courts at the earliest opportunity, "not a question of fact" for the jury. *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. Dist. Ct. App. 2007). The Supreme Court of Florida has adopted § 46 of the Restatement (Second) of Torts, which explains that liability for intentional infliction of emotional distress attaches "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985) (quoting Restatement (Second) of Torts § 46 cmt. d (Am. L. Inst. 1965)). One way to determine whether this standard is met is to consider whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d).

Reviewing the facts alleged in Plowright's complaint, it is hard to imagine that this standard has not been met—at least with respect to Cordova. According to Plowright, Cordova came to his house after he called 911, held him at gunpoint, and fatally shot his dog in front of him without justification, even though the dog had been "incapacitated" by a taser and was "incapable of harming anyone." Doc. 9 at 6. Although further factual development may contextualize or refute this alleged conduct, as pled, the act of fatally shooting Niles as he lay helpless was "utterly intolerable in a civilized society" and would likely lead "an average member of the community" to exclaim, "Outrageous!"

The officers are correct that "the standard for outrageous conduct is particularly high in Florida." *Clemente v. Horne*, 707 So. 2d 865, 867 (Fla. Dist. Ct. App. 1998) (internal quotation marks omitted). But it is not insurmountable. Florida courts have held conduct to be outrageous, for example, where: police officers showed photos and video footage from the autopsy of the plaintiffs' family member to individuals not involved in investigating his

death, *Williams v. City of Minneola*, 575 So. 2d 683, 691 (Fla. Dist. Ct. App. 1991); an insurance agent threatened and harassed a disabled policyholder with a "vicious verbal attack," *Dependable Life Ins. Co. v. Harris*, 510 So. 2d 985, 988–89 (Fla. Dist. Ct. App. 1987); an insurance agent intentionally misrepresented to a policyholder that he was no longer deemed disabled to get him to surrender the policy, *Dominguez v. Equitable Life Assurance Soc'y of U.S.*, 438 So. 2d 58, 61–62 (Fla. Dist. Ct. App. 1983); and an insurer directed the owner of a pet store not to tell the plaintiff that the skunk that bit her might have had rabies, *Kirkpatrick v. Zitz*, 401 So. 2d 850, 851 (Fla. Dist. Ct. App. 1981) (per curiam).

In our view, Cordova's actions were as outrageous—if not more so—than much of the conduct found to be outrageous in the examples above. *Cf. Muhlenberg Township*, 269 F.3d at 218–19 (holding that the outrageous-conduct element of a Pennsylvania intentional-infliction-of-emotional-distress claim could have been satisfied where an officer's "attention was called to the severe emotional distress of the pet's owner, he hesitated before shooting, and he then attempted to fire five bullets into the pet within the owner's view and without justification"). At this stage, then, the allegations in Plowright's complaint satisfied the second element of his claim.

Even if Plowright's complaint alleged sufficiently outrageous conduct by Cordova to satisfy the second element, Cordova argues that Plowright failed to allege that his resulting emotional distress was severe enough to satisfy the fourth element. Again, we are unconvinced. It is true that Florida permits liability for

intentional infliction of emotional distress only "where the distress inflicted is so severe that no reasonable man could be expected to endure it." Restatement (Second) of Torts § 46 cmt j; *accord McCarson*, 467 So. 2d at 278–79 (adopting § 46 of the Restatement). But Plowright satisfied that standard by alleging that Cordova's conduct caused him "severe damaging emotional distress," including "psychological trauma, emotional distress, depression, physical trauma, pain, and suffering." Doc. 9 at 9. What is more, this is one of the "many cases" in which "the extreme and outrageous character of the defendant's conduct is in itself important evidence" of the requisite emotional distress. Restatement (Second) of Torts § 46 cmt. j.

Based on the allegations in the complaint, Plowright stated a valid claim for intentional infliction of emotional distress against Cordova.

2.    Cordova is not immune from suit under state law.

Assuming that Plowright stated a valid state-law claim, Cordova nevertheless insists that he is shielded from suit by state-level immunity under section 768.28(9)(a), Florida Statutes, which establishes that police officers and other officials "may not be held personally liable in tort" in all but the most egregious of circumstances.

We reject this argument. Although Florida law generally provides officers with immunity from suit, this immunity does not apply when an officer "act[s] in bad faith or with malicious purpose

or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). And Florida courts have already determined that "the reckless conduct element of an intentional infliction of emotional distress claim 'would at least constitute willful and wanton conduct' under § 768.28(9)(a)." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1330 (11th Cir. 2015) (quoting *Williams v. City of Minneola*, 619 So. 2d 983, 987 (Fla. Dist. Ct. App. 1993)). By their very nature, then, allegations that state a valid claim for intentional infliction of emotional distress are sufficient to overcome an officer's state-level immunity. *Compare* Fla. Stat. § 768.28(9)(a) ("An officer . . . may not be held personally liable in tort . . . *unless* such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." (emphasis added)) *with id.* ("The state or its subdivisions are not liable in tort for the acts or omissions of an officer . . . committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.").

   3.    The amended complaint failed to state a valid
         claim for intentional infliction of emotional dis-
         tress against Rondon.

We turn now to the intentional-infliction-of-emotional-distress claim against Rondon. Although there may be circumstances in which the application of non-lethal force against a domestic animal constitutes outrageous conduct, Rondon's decision to tase

Niles—a barking, unrestrained dog at the scene of a 911 call—falls short of the high bar set by Florida law. The district court thus did not err in dismissing Count Two of the amended complaint against Rondon.

## C.    Plowright's claims against the county

Lastly, Plowright challenges the dismissal of his repleaded claims against the county for negligence and negligent training and supervision "in violation of 42 U.S.C. [§] 1983" in the second amended complaint. Doc. 50 at 5–7. Because he failed to state a claim for relief under § 1983, however, we conclude that both claims were properly dismissed.

Counties and other municipal entities may be held liable under § 1983 only where "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). This standard requires a plaintiff to show that (1) "his constitutional rights were violated"; (2) "the municipality had a custom or policy that constituted deliberate indifference to that constitutional right"; and (3) "the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Absent a formal policy, the plaintiff may satisfy the second element by identifying "an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law" or "a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022).

Plowright's claims against the county do not satisfy the second element of a *Monell* claim under either approach. In the first count of his second amended complaint, Plowright alleged in conclusory fashion that the county "had a county wide custom of shooting . . . dogs." Doc. 50 at 5. Without any additional details about the circumstances of past incidents, however—including whether the dogs in question posed an imminent threat—Plowright failed to allege facts plausibly indicating that there was such a custom or, even if there was, that the custom "constituted deliberate indifference to [his] constitutional right[s]." *McDowell*, 392 F.3d at 1289. Plowright's bare assertion that Rondon and Cordova were "act[ing] in their role as decision makers for the county" when they encountered Niles, Doc. 50 at 5, is likewise too conclusory to carry his claim, *see Iqbal*, 556 U.S. at 678 (recognizing that "formulaic recitation[s] of the elements of a cause of action" and "naked assertions devoid of further factual enhancement" are insufficient to state a claim for relief (alteration adopted) (internal quotation marks omitted)).

Plowright's second claim against the county fares no better. Although a municipality can be held liable under § 1983 for a "policy- or custom-based failure to adequately train or supervise its employees," Plowright alleged no facts indicating that the county "was aware of the need to train or supervise its employees" on encounters with domestic animals before the incident giving rise to his complaint. *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1188–89 (11th Cir. 2011). Once again, Plowright's naked statement that the county "knew or should have

known [Rondon and Cordova] did not have adequate policy train-ing" about how to deal with domestic animals, Doc. 50 at 6, is in-sufficient to satisfy the pleading standard. To the extent that Plow-right seeks to rely on the news article attached to his second amended complaint, that attempt also fails. The article does not show that these incidents happened *before* Cordova shot Niles or that they involved circumstances in which a reasonable officer could not have believed that the dogs posed an imminent danger. Because Plowright failed to state a claim under *Monell*, the district court properly dismissed his claims against the county.[6]

---

[6] Plowright argues that dismissal of his claims with prejudice was error be-cause he could have amended his complaint to add a count for "negligent han-dling of a firearm and negligent decision to use a firearm." Appellant's Br. 20. The district court did not err in dismissing the claims with prejudice. Plow-right is correct that Florida recognizes a cause of action for the negligent han-dling of a firearm and the negligent decision to use a firearm. *See Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1263 (11th Cir. 2001). But Plowright, who has been represented by counsel throughout this suit, never moved to amend his complaint. *See Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018) (explaining that requests for leave to amend must be made by motion). District courts need not *sua sponte* permit amendment when a plaintiff "who is represented by counsel[] never filed a motion to amend []or requested leave to amend." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). Plowright had two chances to plead a plausible claim against the officers and three chances to plead a plausible claim against the county. We should "not further burden the district court or the defendants" by giving Plowright another "do-over" to "add a new cause of action." *Chua v. Ekonomou*, 1 F.4th 948, 957 (11th Cir. 2021). Besides, the new claims would fail: Rondon and Cordova *intentionally* discharged their weapons at Niles. *See*

## IV.    CONCLUSION

We **REVERSE** the dismissal of Plowright's § 1983 and intentional-infliction-of-emotional-distress claims against Cordova and **REMAND** for further proceedings consistent with this opinion. We **AFFIRM** the dismissal of Plowright's remaining claims against Rondon, Ramirez, and the county.

---

*Lewis*, 260 F.3d at 1264 (implying that a complaint does not adequately state a claim for negligence when "the shooting was an intentional act").